IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KIMBERLY JUNE COX                                                                    PLAINTIFF

v.                             CASE NO.         11-2210

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on July 13, 2009, alleging an onset date of June 15, 2009, due to plaintiff's Lower Back Pain, Rheumatoid Arthritis and Depression (T. 160).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on November 4, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 46 years of age and possessed of a GED (T. 34) with some vocational college.  The Plaintiff had past relevant work ("PRW")

-1-

experience as an EMT, bank teller, and customer service representative  (T. 170).

On December 20, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's back pain, mood disorder, rheumatoid arthritis, obesity, and hypothyroidism did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with limitations.  T. 13-14.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupation of Driver (DOT# 919.663.022).  T. 19.

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion**:

**A.  Severe Impairments**

The Plaintiff fist contends that the ALJ failed to recognize the Plaintiff's herniated disc, rheumatoid arthritis, obesity, depression, and hypothyroidism as severe impairments. (ECF No. 12, pp. 10-11. Contrary to Plaintiff's argument, the ALJ found that Plaintiff had severe back pain, mood disorder, rheumatoid arthritis, obesity, and hypothyroidism (Tr. 11).

The Plaintiff also seems to argue that the ALJ erred "by concluding that the Plaintiff's impairments were not severe enough to meet or equal one of the listed impairments..." ( ECF No. 12, p. 11). The Plaintiff does not state how she met a listed impairment nor direct the court to any medical evidence to support his conclusory claim. The ALJ gave specific reasons

why the Plaintiff did not meet the listings in 1.04, 1.02, 1.03, and 12.08. The court has reviewed those reasons and finds no error.

**B.  Residual Functional Capacity**

The ALJ found that the Plaintiff had the residual functional capacity to perform sedentary work except she should work where interpersonal contact is incidental to the work performed and the complexity of tasks is learned and performed by rote, with few variables and little judgment; where the supervision required is simple, direct, and concrete. The ALJ found that the claimant can occasionally lift/carry 10 pounds and frequently less, could sit for 6 hours and could stand/walk for 2 hours in and eight-hour work day and that she could occasionally climb, balance, crawl, kneel, stoop, and crouch.  He further determined that the work should not require rapid repetitive flexion/extension of wrists. (T. 13-14).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

**1. Credibility**

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC (T. 17). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006)

The first, and seemingly the foremost, reason the ALJ listed for discounting the testimony of the Plaintiff is that "she refused to follow the prescribed recommended treatment to undergo surgery" (T. 17). Failure to follow a prescribed treatment that would ameliorate an impairment, without good reason, is a valid basis for denying benefits (See 20 C.F.R. §§ 404.1530(b), 416.930(b)), however, it is improper to deny benefits on the basis of declined surgery, when

surgery is only suggested rather than a prescribed course of treatment. *See Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir.1985) (a claimant's refusal to undergo surgical treatment is not a sufficient reason to deny benefits where surgery was at most recommended or suggested but not prescribed by a physician); *see also Young v. Califano*, 633 F.2d 469, 472–73 (6th Cir.1980) (unwillingness to undergo a suggested surgery does not constitute failure to follow prescribed treatment);

While the ALJ describes her treating physician proposed course of treatment as prescribed the evidence does not support this. Dr. Marsh's records show that he first discussed "percutaneous decompression" and alternatively fusion in May 2003. (T. 309). In August 2003 Dr. Marsh still felt the Plaintiff was a "good candidate" for decompressor technology (T. 297). There is nothing in the record to show that either the decompression procedure or the fusion were ever prescribed by Dr. Marsh. Regardless, in March 2004 Dr. Marsh's records reflect that he did "not recommend surgery for her at this time". (T. 283).

The ALJ next finds that the Plaintiff's credibility is diminished because she reported to Dr. Rothgery in January of 2009 that she was not taking any medication for her back pain (T. 17). A review of Dr. Rothgery records shows that the Plaintiff did stated that she did not take any "rheumatoid meds" but that she took "Piroxicam[1] and Tramadol[2] for her pain". (T. 394). The Plaintiff went on to report that she did not take medication for her Rheumatoid arthritis because she had no insurance.

---

[1] Piroxicam is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Piroxicam works by reducing hormones that cause inflammation and pain in the body. Piroxicam is used to treat pain or inflammation caused by arthritis. See www.drugs.com

[2] Tramadol is a narcotic-like pain reliever. Tramadol is used to treat moderate to severe pain. See www.drugs.com

The ALJ also found the Plaintiff's complaints less than credible because of a bungie cord injury in July 2009. The Medical History merely states that "Bungie cord hit left hand". (T. 412). The ALJ parlayed this history into an assumption on his part that although "it is not clear that the claimant participated in a bungie cord jump, she was at least in close enough proximity to one to be injured by it. (T. 16). The Plaintiff argues in her brief that she "suffered a bungee cord injury when she was standing next to a pickup truck when a tarp that was being strapped down by a bungee cord slipped and truck her hand." (ECF No. 12, p. 12).

The ALJ did not question the Plaintiff at the hearing concerning the bungie cord injury and his assumption of matters outside the record is not appropriate and not a proper basis to discount her credibility. The court finds that the ALJ did not give good reasons for discrediting the credibility of the Plaintiff.

**2. RFC Assessment**

The ALJ had a Physical RFC assessment performed by Jerry Thomas, M.D. on February 17, 2010 which found the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; Stand and/or walk and sit for about 6 hours in an 8 hour work day and that she had no limitations on her ability to push and/or pull. (T. 428). Dr. Thomas found that the Plaintiff had NO postural limitations (T. 429) and NO manipulative limitations (T. 430). Theses findings were reviewed and affirmed by Dr. Jim Takach on April 19, 2010 (T. 461).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). The ALJ in this case

specifically states that he affords "less weight" to the opinions of the consultive examiners (T. 18) and significant weight to the opinions of the Plaintiff's treating physicians. (T. 17).

The Plaintiff first began to be treated at Durango Orthopedic Associates, P.C. in July 1991 following a motor vehicle accident (T. 354). Her records show she was still experiencing pain in January 1992 (T. 348). After some hiatus she was seen again in July 1994 because of continued pain in back and knee. After another break in treatment she was seen again in November 2002 as a result of re-injuring her back in a work related incident (T. 333) and was diagnosed with right sacroiliac joint dysfunction and left iliosacral dysfunction. (T. 334). Steroid injections were performed in November 2002 (T. 366), December 2002 (T. 368) and January 2003 (T. 365) without any real benefit.

A diskometry and nucleometry were performed by Dr. Bohachevsky in April 2003 which showed the L5-S1 disk to be irregular and that injection into that disk caused concordant pain at 90 psi. (T. 364). In May Dr. Marsh diagnosed the Plaintiff with an L5-S1 anular tear with provocative discography positive and with facet syndrome. (T. 309). Dr. Marsh discussed treatment options of percutaneous disc decompression and/or spinal fusion. (Id.). Dr. Marsh saw the Plaintiff again on May 9, 2003 because of an acute onset of pain. (T. 306). Dr. Marsh spoke with her again on June 6, 2003 about disk decompression and/or fusion. His notes she that she continued on Oxycotin and hydrocodone for pain but not doing much good. (T. 302). On August 15, 2003 the Plaintiff was again seen for pain in her back and Dr. Marsh stated that he felt she was "a good candidate for decompressor technology". At this time the Plaintiff was on

DURAGESIC[3] 25 mcg q.3d., LORTAB[4] 7.5 three per day, and SKELAXIN[5] 2 to 3 per day. (T. 297).  In October 2003 the Plaintiff was still on her pain medication and there was some concern over whether the workman's compensation would cover "any type of intervention". (T. 292). In November 2003 the Plaintiff was still on pain medication and trying to work out her medical coverage.  Dr. Marsh did discuss facet injections as an alternative to other treatment. (T. 289). According to Dr. Marsh's notes in January 2004 facet injections were performed but did not provide sustained relief and Plaintiff continued on her previously prescribed pain medications. (T. 287).  In March 2004 Dr. Marsh stated that "I do not recommend surgery for her at this time but I am not a surgeon". (T. 283).  Dr. Marsh stated that he would give her permanent job restrictions of "sitting for 30 minutes at a time with a 5 minute break, no repetitive bending, lifting or twisting. No lifting greater than minutes (sic) and she is able to work 8 hours in a day". (Id.).  He acknowledged that she would continue to seek a job that will meet her restrictions. (T. 282).

After Dr. Marsh's opinion the Plaintiff secured work with Wells Fargo Bank, City Market, First Western Bank, and Rockline Industries. It appears that all of these jobs allowed the Plaintiff the flexibility of standing up after being seated for some time.

Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th

---

[3]Duragesic is a skin patch containing fentanyl, an opioid pain medicine.

[4]Lortab contains a combination of acetaminophen and hydrocodone. Hydrocodone is in a group of drugs called opioid pain relievers.

[5]Skelaxin is a muscle relaxant.  See www.drugs.com

Cir.2004); 20 C.F.R. § 404.1527(d)(2). There can be no question that the Plaintiff's treating physician's opinion is supported by the record. In addition the Plaintiff's treating physician was a specialist. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

Given that the only representative job the VE put forth was Escort Driver[6] the Plaintiff's treating physicians opinion that she could only sit for 30 minutes before having to stand becomes crucial. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should re-contact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010).

The court believes that remand is necessary to allow the ALJ to obtain a Physical RFC assessment from the Plaintiff's treating physician and to allow the ALJ to re-evaluate the Plaintiff's credibility.

**IV.   Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial

---

[6]Drives vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares: Precedes escort and maintains specified distance between pilot vehicle and escort to provide warning to other motorists and to clear traffic at locations. Communicates by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion. DOT 919-663-022.

evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this 1st day of November 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE